UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA

| David G., | Case No. 17-cv-3671 (HB) |
| Plaintiff, | |
| v. | **ORDER** |
| Nancy Berryhill, Acting Commissioner of Social Security, | |
| Defendant. | |

HILDY BOWBEER, United States Magistrate Judge

Pursuant to 42 U.S.C. § 405(g), Plaintiff David G. seeks judicial review of a final decision by the Acting Commissioner of Social Security denying his application for disability insurance benefits. He specifically challenges the ALJ's consideration of his headaches at the second and third step of the regulatory sequential evaluation. The case is now before the Court on the parties' cross-motions for summary judgment. For the reasons set forth below, the Court denies Plaintiff's motion and grants the Commissioner's motion.

I.     **Procedural History**

Plaintiff filed an application for disability insurance benefits ("DIB") on July 11, 2011, alleging an onset of disability date of January 11, 2011. (*See* R. 56.)[1] The

---

[1] The Social Security Administrative Record ("R.") is available at Doc. No. 11.

application was denied initially and on reconsideration. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was convened on May 16, 2013, and the ALJ issued an unfavorable decision on June 14, 2013. (R. 82, 207-23, 245-56.) Plaintiff requested review of the decision, and the Appeals Council granted the request and remanded the case to the ALJ. (R. 230-33, 305-09, 317-22.)

On remand, a different ALJ held a hearing on March 3, 2015, and a supplemental hearing on April 13, 2016. (R. 114-69.) The ALJ issued an unfavorable decision on September 15, 2016. (R. 52-73.) Following the five-step sequential evaluation outlined in 20 C.F.R. § 404.1520(a)(4), the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since January 11, 2011. (R. 58.) At step two, the ALJ determined that Plaintiff had severe impairments of degenerative disc disease of the cervical spine, obesity, history of traumatic brain injury, and major depressive disorder. (R. 58.)[2] Any other impairments documented in the record were found to be

> non-severe or not medically determinable as they have been responsive to treatment, cause no more than minimal vocationally relevant limitations, have not lasted or are not expected to last at a "severe" level for a continuous period of 12 months, are not expected to result in death, or have not been properly diagnosed by an acceptable medical source.

(R. 58.) The ALJ determined that Plaintiff's "head and neck pain" (and symptoms such as slurred words, stubbed walking, dizziness, foggy memory, blurred vision, disorientation, frustration, anger, sadness, and loss of hope) were "symptoms or

---

[2] A "severe impairment" must meet the continuous twelve-month durational requirement, *see* 20 C.F.R. § 404.1509, and "significantly limit[]" an individual's ability to perform basic work activities, 20 C.F.R. § 404.1520(a)(4)(ii), (c).

limitations of conditions and not medically determinable impairments." (R. 58.) The ALJ did not refer specifically to "headaches" at this step of the evaluation, though she did mention "head pain." (R. 58.) The ALJ explained that the listed symptoms, presumably including head pain, had been considered in determining Plaintiff's residual functional capacity ("RFC")[3] at step four.

Proceeding to the third step of the sequential evaluation, the ALJ found that none of Plaintiff's impairments, considered alone or in combination, met or equaled the severity of an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1. (R. 59.) The ALJ considered Listing 1.01 (musculoskeletal), Listing 11.18 (cerebral trauma), Listing 12.02 (organic mental disorders), and Listing 12.04 (affective disorders). (R. 59.) The ALJ determined that the evidence did not establish an impairment with signs that reflected listing-level severity, and that Plaintiff's treating and examining providers had not reported supporting clinical and laboratory findings. (R. 59.)

At step four, the ALJ concluded that Plaintiff retained the RFC to perform a range of light work as defined in 20 C.F.R. 414.1567(b), except that he could only occasionally climb ramps and stairs; never climb ladders or scaffolds; frequently balance; stoop, kneel, crouch, and crawl occasionally; reach overhead with both extremities occasionally; understand, remember, and carry out simple instructions; make simple, work-related

---

[3] An RFC assessment measures the most a person can do, despite her limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ must base the RFC "on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).

decisions; tolerate occasional changes in work location; and tolerate occasional interactions with supervisors, coworkers, and the public. (R. 61.) With this RFC, the ALJ determined, Plaintiff would not be able to perform any of his past relevant work, but could perform other jobs that existed in significant numbers in the national economy. (R. 71-72.) Consequently, the ALJ deemed Plaintiff not disabled. (R. 73.)

The Appeals Council denied Plaintiff's request for review, which made the ALJ's decision the final decision of the Commissioner. (R. 1.) Plaintiff then commenced this action for judicial review.

The Court has reviewed the entire administrative record, giving particular attention to the facts and records cited by the parties. The Court will recount the facts of record only to the extent they are helpful for context or necessary for resolution of the specific issues presented in the parties' motions.

## II. Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision. 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or the

Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence, and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for DIB, the claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The disability, not just the impairment, must have lasted or be expected to last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

## III. Discussion

### A. Step Two

Plaintiff argues the ALJ erred by not deeming his headaches a "severe impairment" at step two. Step two of the sequential evaluation "requires the claimant to show that he has an 'impairment or combination of impairments which significantly limits' 'the abilities and aptitudes necessary to do most jobs.'" *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (quoting 20 C.F.R. §§ 404.1520(c), 404.1521(b) (amended Mar. 27, 2017)). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (further describing a

non-severe impairment as one that "would have no more than a minimal effect on the claimant's ability to work").

"The severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs." SSR 85-28, 1985 WL 56856, at *3 (S.S.A. 1985). Examples of such activities include "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of [judgment], responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." *Id.* A claimant's "age, education, and work experience" are not relevant to the step two inquiry, *see* 20 C.F.R. § 404.1520(c); rather, "medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities." SSR 85-28, 1985 WL 56856, at *4. The severity showing "is not an onerous requirement for the claimant to meet, . . . but it is also not a toothless standard." *Kirby*, 500 F.3d at 708 (citations omitted).

The ALJ did not specifically mention Plaintiff's headaches at step two. To the extent the ALJ's reference to "head pain" was intended to include headaches, the ALJ's consideration of Plaintiff's headaches originated from a faulty premise that his headaches were merely "symptoms or limitations of conditions" and not independent "medically determinable impairments." (R. 58.) There is ample objective medical evidence documenting headaches as an impairment that affected Plaintiff's ability to perform work activities. This evidence includes opinions from the state agency consulting physicians

6

that Plaintiff's headaches were severe impairments (R. 176, 193), which the ALJ did not discredit (R. 68); treating physician Dr. Lisa R. Davidson's assessment of migraine headaches and finding that Plaintiff suffered from a "chronic mixed headache disorder" that caused work absenteeism and forgetfulness (R. 939, 941); treating physician Dr. Carolyn Stelter's findings that Plaintiff suffered from chronic myofascial and migraine headaches, had signs and symptoms of cognitive dysfunction that had significantly worsened over the past few years, and had memory problems (R. 1034-35, 1255-56, 1262-64, 1268, 1272); examining consultant Dr. Frederick R. Taylor's assessment that Plaintiff suffered from chronic post-traumatic headaches with chronic migraines (R. 1051-52); nurse practitioner Laura Meyer's assessment of migraine headaches and report that Plaintiff's headaches had not responded to multiple treatment modalities (R. 1096-97); Dr. Stelter's treatment note documenting failed attempts to return to work due to "recurrent headaches and . . . frequently missing work due to the severe headaches" (R. 1219-22); Dr. Stelter's progress note documenting "significant" headaches and an inability to function without pain medication (R. 1301-03); and Dr. Stelter's progress notes documenting findings of mild memory deficits (R. 1317, 1324-25).

In addition, a consult note from September 17, 2009—which the ALJ cited expressly at step four—reflected that Plaintiff's poor cognitive function was attributable to headaches and neck pain. (R. 64, 787.) A pain evaluation conducted in June 2008, which the ALJ also cited at step four, attributed Plaintiff's headaches in part to facetogenic disease on the left side of the neck. (R. 65, 794.) Moreover, a mental status

7

examination in September 2011 documented concentration deficits. (R. 1199.)

In light of the above evidence, the Court finds that the ALJ erred in finding Plaintiff's headaches merely a symptom without specifically considering whether they were a separate medically determinable impairment. The above evidence further establishes that Plaintiff's headaches were more than a slight abnormality and that they significantly limited his abilities to do basic work activities. Establishing that an impairment was severe is not a difficult burden to meet, and Plaintiff has met his burden here. To the extent the severity of Plaintiff's headaches could be considered a close call, "[a]ny doubt as to whether the requisite showing of severity has been made is to be resolved in favor of the claimant." *Dewald v. Astrue*, 590 F. Supp. 2d 1184, 1199 (D.S.D. 2008) (citing SSR 85-28; *Newell v. Commissioner of Social Security*, 347 F.3d 541, 547 (3d Cir. 2003); *Gilbert v. Apfel*, 175 F.3d 602, 605 (8th Cir. 1999)).

That is not the end of the analysis, however. The Commissioner argues that any error at step two was harmless because the ALJ fully considered Plaintiff's headaches at step four of the sequential evaluation. (Def.'s Mem. Supp. Mot. Summ. J. at 12-13.) An ALJ's error at step two in failing to assess a claimed severe impairment "is harmless if the claimant 'makes a threshold showing of any "severe" impairment [and] the ALJ continues with the sequential evaluation process and considers all impairments, both severe and nonsevere.'" *Snyder v. Colvin*, No. 12-cv-3104 (MJD/JJK), 2013 WL 6061335, at *9 (D. Minn. Nov. 18, 2013) (quoting *Bondurant v. Astrue*, No. 09-cv-328 (ADM/AJB), 2010 WL 889932, at *2 (D. Minn. Mar. 8, 2010)); *accord Lund v. Colvin*, 13-cv-113 (JSM), 2014 WL 1153508, at *27 (D. Minn. Mar. 21, 2014); *Johnson v.*

*Comm'r of Soc. Sec.*, No. 11-cv-1268 (JRT/SER), 2012 WL 4328413, at *21-22 (D. Minn. July 11, 2012), *R. & R. adopted*, 2012 WL 4328389 (D. Minn. Sept. 20, 2012); *Lorence v. Astrue*, 691 F. Supp. 2d 1008, 1028 (D. Minn. 2010). That is precisely what the ALJ did here.

At step four, the ALJ fully considered the objective medical evidence and other evidence of Plaintiff's headaches, including the intensity, persistence, and limiting effects. The ALJ noted that Plaintiff had suffered a traumatic brain injury in 2004 and sought treatment over the years for headaches. (R. 61.) The ALJ identified numerous treatment notes that documented headaches, but also described contemporaneous findings of no sensory deficits, no acute distress, clear speech, clear thoughts, intact memory, no signs of dementia or brain trauma, and no significant neuropsychiatric abnormalities. (R. 62-65.) The ALJ found these findings were not consistent with the severity, persistence, and limiting effects of headaches claimed by Plaintiff. The ALJ also identified evidence that medication was effective in controlling Plaintiff's headaches,[4] and pointed out several times that imaging of his brain and spine, a neuropsychiatric assessment, and a cognitive assessment were normal.[5] (R. 62-64, 67, 69, 70.)

---

[4] Although nurse practitioner Laura Meyer remarked that Plaintiff's headaches had not responded to multiple treatment modalities, *see infra*, the ALJ cited other evidence at step four that Plaintiff reported improved symptoms, that his headaches were "pretty well controlled or treated with Treximet and Percocet," and that Dr. Stelter described Plaintiff as "stable" on his pain medication. (R. 62-63 (citing Exs. 28F, 30F, 37F).) The Court acknowledges there is inconsistent evidence concerning the effectiveness of medication, but when two inconsistent positions may be reached from the evidence, and one of those positions is that of the Commissioner, the Commissioner's decision must be affirmed. *See Robinson*, 956 F.2d at 838.

[5] Similarly, though the record contains some findings of mild memory and concentration

9

The ALJ specifically addressed the evidence concerning headaches from Dr. Stelter and gave her opinion some weight. (R. 69.) He reduced the weight of her opinion specifically as to headaches because of a normal MRI and non-focal neurological findings. (R. 69.) Nonetheless, the ALJ limited Plaintiff to occasional interaction with others, in light of evidence that he was easily irritable and frustrated because of his physical impairments, which presumably included headaches. (R. 69.) The ALJ gave no weight to Dr. Stelter's and Dr. Davidson's opinions that Plaintiff could not work because those opinions were not consistent with medical evidence and because such a determination is reserved exclusively to the Commissioner. (R. 69.) Notably, Plaintiff does not challenge any aspect of the ALJ's analysis at step four, including the RFC assessment or the treatment of opinion evidence.

Accordingly, the Court finds the ALJ did not commit reversible error in failing to include headaches as a medically determinable severe impairment at step two.

B.  **Step Three**

At the third step of the sequential evaluation, the ALJ determines whether a claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1. It is a determination of "medical severity," *see* 20 C.F.R.

---

deficits, poor cognitive function attributable in part to headaches, and headaches caused by facetogenic disease, the record also contains findings of normal memory, concentration, and cognitive function, and no physical etiology for the headaches, as cited by the ALJ. (R. 62-67 (citing, *e.g.*, Exs. 6F, 14F, 16F, 17F, 20F, 22F, 23F, 37F, 40F).) Because this aspect of the ALJ's decision is supported by some, substantial evidence of record, even though there is other, inconsistent evidence, it may not be reversed. *See Robinson*, 956 F.2d at 838

§ 404.1520(a)(4)(iii), and thus based strictly on medical evidence, *Sullivan v. Zebley*, 493 U.S. 521, 525 (1990); *Cockerham v. Sullivan*, 895 F.2d 492, 496 (8th Cir. 1990) ("[T]he question of whether a claimant meets a listed impairment is strictly a medical determination."); Social Security Ruling (SSR) 83-19 (S.S.A. 1983) (instructing that a finding of medical equivalence may be based only on the "symptoms, signs, and laboratory findings in the medical evidence"). The claimant has "the burden of proof . . . to establish that his or her impairment meets or equals a listing." *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004).

"To meet a listing, an impairment must meet all of the listing's specified criteria." *Id.* On the other hand, a claimant's impairment "is medically equivalent to a listed impairment . . . "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). To show medical equivalence, a claimant "must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Zebley*, 493 U.S. at 531 (citations omitted); *see also* 20 C.F.R. § 404.1526(b)(1)(i)-(ii).

Plaintiff argues that the ALJ erred by not failing to consider Listing 11.02 (convulsive epilepsy) at step three. According to Plaintiff, because there is not a specific listing for migraines, "the listing for epilepsy is considered as a bench mark to see if the migraine condition equals the epilepsy listing." (Pl.'s Mem. Supp. Mot. Summ. J. at 22.) This position is supported by the case law. *See, e.g.*, *Tabor v. Berryhill*, No. 17-cv-1200 (FLN), 2018 WL 3826685, at *4, 8-9 (D. Minn. Aug. 10, 2018); *Buus v. Colvin*, No. 4:14-cv-04066-KES, 2015 WL 2372615, at *9 (D.S.D. May 18, 2015).

11

Plaintiff relies on the Social Security Administration Program Operations Manual ("POMS") DI 24505.015 in support of his argument. It appears that POMS DI 24505.015 has been superseded by POMS DI 24508.10. *See Moten v. Berryhill*, No. 4:17-cv-848-JEO, 2018 WL 4104234, at *10 & n.11 (N.D. Ala. Aug. 29, 2018). In addition, POMS DI 24505.015 is no longer available on the Social Security Administration's website, *see* S.S.A., POMS, https://secure.ssa.gov/apps10/poms.nsf/ chapterlist!openview&restricttocategory=04, and POMS DI 24508.010 is the policy that now applies to listing equivalence, *see* S.S.A., POMS, https://secure.ssa.gov/apps10/ poms.nsf/lnx/0424508010. Nevertheless, because POMS DI 24505.015 was in effect at the time of the ALJ's decision, the Court will consider Plaintiff's argument.

Under POMS DI 24505.015, if a claimant has an impairment that is not included in the Listing of Impairments, the unlisted impairment may be deemed medically equivalent to the listed impairment if the findings related to the unlisted impairment "are at least of equal medial significance to those of a listed impairment." POMS DI 24505.015(B)(2)(b). The policy included the following example:

> A claimant has chronic migraine headaches for which she sees her treating doctor on a regular basis. Her symptoms include aura, alteration of awareness, and intense headache with throbbing and severe pain. She has nausea and photophobia and must lie down in a dark and quiet room for relief. Her headaches last anywhere from 4 to 72 hours and occur at least 2 times or more weekly. Due to all of her symptoms, she has difficulty performing her ADLs. The claimant takes medication as her doctor prescribes. The findings of the claimant's impairment are very similar to those of 11.03, Epilepsy, non-convulsive. Therefore, 11.03 is the most closely analogous listed impairment. Her findings are at least of equal medical significance as those of the most closely analogous listed impairment. Therefore, the claimant's impairment medically equals Listing 11.03.

12

POMS DI 24505.015(B)(7)(b).[6] When the ALJ issued her decision on September 15, 2016, Listing 11.02 provided:

> 11.02 Epilepsy—convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment.
>
> > A. Daytime episodes (loss of consciousness and convulsive seizures) or
> >
> > B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

20 C.F.R. pt. 404, subpt. P, app. 1, § 11.02.

The medical evidence of record does not contain findings of symptoms such as aura, altered awareness, nausea, or phototopia. *See* POMS DI 24505.015(B)(7)(b). Though the record does contain evidence of headaches, those headaches are not described as intense, throbbing, or extremely painful. The record also does not contain medical evidence of symptoms that would equate to a typical seizure pattern, daytime loss of consciousness or convulsions, or nocturnal episodes that significantly interfered with activities. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.02. Plaintiff simply has not identified medical findings equal in severity and duration to the criteria of § 11.02. The Court therefore finds that the ALJ did not err in failing to assess whether Plaintiff's headaches were medically equivalent to Listing 11.02.

---

[6] POMS DI 24505.015(B)(7)(b) refers to Listing 11.03 (non-convulsive seizures), not Listing 11.02 (convulsive seizures), which is the focus of Gessner's argument.

Based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. David G.'s Motion for Summary Judgment [Doc. No. 12] is **DENIED**;

2. Commissioner Nancy Berryhill's Motion for Summary Judgment [Doc. No. 14] is **GRANTED**; and

3. This case is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: September 24, 2018        s/ *Hildy Bowbeer*
                                 HILDY BOWBEER
                                 United States Magistrate Judge